IN THE UNITED STATES DISTRIT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**ATLANTIC COAST MARINE GROUP, INC.,**
     **Plaintiff**
v.                Civil Action No.

**OSV SKIPPIN SUE, Vessel No. 576513
her engines, tackle, equipment, furniture,
appurtenances, etc.** *in rem*,

and

**LANSDOWNE VENTURES, LLC**
     **Defendants.**

## VERIFIED COMPLAINT

NOW COMES, Plaintiff, Atlantic Coast Marine Group, Inc. ("ACMG") by counsel, and files this Verified Complaint against defendants OSV SKIPPIN SUE, Vessel no. 576513 her engines, tackle, equipment, furniture, appurtenances, etc ("SKIPPIN SUE"), *in rem*, and Lansdowne Ventures, LLC ("Lansdowne"), *in personam*, for damages, maritime arrest, and maritime attachment and, upon information and belief, states as follows;

### Jurisdiction and Venue

1. This is an admiralty and maritime claim within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and within the meaning Federal Rule of Civil Procedure 9(h). This action is brought pursuant to and in accordance with Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims and Forfeiture Proceedings of the Federal Rules of Civil Procedure.

2.     Venue is proper in this District in accordance with Rule C as the OSV SKIPPIN SUE is or will be within the physical jurisdiction of this Court during the pendency of this action.

3.     Defendant Lansdowne is not found within this District within the meaning of Rule B; however, its vessel, the SKIPPIN SUE, is or will be within the jurisdiction of this Court during the pendency of this action.

## Parties

4.     ACMG is a North Carolina corporation providing towage and salvage services on the waters in and around Beaufort, North Carolina including the offshore waters of the Atlantic Ocean.

5.     ACMG maintains a fleet of approximately fourteen fully equipped dedicated salvage vessels.

6.     ACMG employs United States Coast Guard licensed captains with endorsements permitting them to engage in marine commercial assistance.

7.     ACMG's licensed captains have knowledge of and experience in the local waters in and around Beaufort, North Carolina.

8.     ACMG maintains a fulltime watch standing service to timely respond to radio hailing from vessels in need of its services.

9.     ACMG often assumes a large amount of risk to its vessels and their crews and considers several variables aiding vessels in need of its services.

10.    SKIPPIN SUE, is a United States flagged ocean supply vessel of 637 Gross Ton register and an approximate length of 104.6' built in 1976.

11. Defendant Lansdowne is a limited liability company registered in the State of Wyoming with a principal address of 5700 Snake River Ranch Road, Wilson, WY 83014.

## Underlying Salvage

12. On January 4, 2022, SKIPPIN SUE grounded on a jetty in the vicinity of Radio Island, Beaufort, North Carolina ("grounding").

13. The master or a crew member of the SKIPPIN SUE reported the grounding over the radio.

14. A radio call from the SKIPPIN SUE requested assistance for the grounding.

15. ACMG heard a radio call from SKIPPIN SUE and initiated salvage operations for the grounding.

16. ACMG responded to the grounding with a 41' Utility Boat ('UTB").

17. The UTB was the first salvage vessel to arrive at the grounding.

18. Upon the arrival of the UTB at the grounding site, the crew of the UTB performed a survey of the SKIPPIN SUE to prepare a salvage plan.

19. Upon their arrival at the grounding site, the crew of the UTB understood the tide had already begun to ebb.

20. Due to the ebbing tide, the SKIPPIN SUE faced a significant hogging[1] threat.

21. After making its initial survey of the grounding, the UTB successfully steered to a safe location in close proximity to the SKIPPIN SUE without colliding with the grounded vessel.

---

[1] Hogging and sagging are nautical terms. A vessel is said to be hogging when it drops at the ends. A vessel is sagging when it drops between the ends. A simple illustration would be the depiction of the mouth in a child's drawing of a happy face (sagging) and a sad face (hogging).

3

22. While near the SKIPPIN SUE, the crew of the UTB successfully passed its towing hawser to the grounded vessel.

23. After passing its towing hawser to SKIPPIN SUE, the UTB successfully rigged its towing gear without damaging the SKIPPIN SUE.

24. After connecting the towing gear to the SKIPPIN SUE, the UTB successfully tugged SKIPPIN SUE free of its grounding. Exhibit 1 - Picture

25. After the UTB freed the SKIPPIN SUE from its grounding, the crew of the UTB performed another survey of the SKIPPIN SUE to identify the vessel's watertight and tank space integrity.

26. During the watertight and tank space integrity inspection, the crew of the UTB confirmed an approximately 1" breach in the SKIPPIN SUE's shell plating located approximately amidships on the port side.

27. The watertight and tank space integrity inspection revealed the crew of SKIPPIN SUE ineffectively tried to plug the aforementioned breach with a broom handle and a trash bag.

28. The crew of SKIPPIN SUE did not have the experience or means to salvage the vessel and prevent further damage to the vessel caused by the grounding.

29. During the watertight and tanks space integrity inspection, the crew of the UTB confirmed seawater flooding in the engine room of the SKIPPIN SUE.

30. After the watertight tanks space integrity inspection, the UTB escorted SKIPPIN SUE to ACMG's shore facility located at 201 Arendell Street in Morehead City, North Carolina where further damage inspections and the successful vacuum-removal of 2,287 gallons of seawater contaminated with oil and fuel occurred.

31. ACMG deployed divers to conduct an underwater inspection of the previously grounded vessel now safely berthed at ACMG's shore facility.

32. The underwater inspection of SKIPPIN SUE at ACMG's shore facility revealed:

   a. Propeller blades rolled and cupped

   b. Port propeller shaft set back by about four inches

   c. Prop guard on the port side sheared away

   d. An approximate 1" puncture amidships, port side, forward of the engines

33. ACMG developed and deployed a rubber compression patch for the breach using a threaded rod to effectively but temporarily stop the flow of seawater into SKIPPIN SUE.

34. After patching the SKIPPIN SUE, ACMG arranged for the transportation of SKIPPIN SUE to Jarrett Bay Boatworks for repairs.

35. SKIPPINS SUE never went to Jarrett Bay Boatworks for the necessary repairs caused by the grounding.

36. Without paying ACMG for its salvage services, SKIPPIN SUE left Morehead City and traveled to Norfolk, Virginia.

37. SKIPPIN SUE arrived at Colonna Shipyard in Norfolk, Virginia for repairs caused by the grounding on or about January 26, 2022.

38. SKIPPIN SUE currently remains at Colonna Shipyard in Norfolk Virginia.

## Salvage Contract

39. ACMG Incorporates by reference previous allegations as if fully set forth herein.

40. In January of 2022, ACMG offered and the owner/captain/owner's agent of the SKIPPIN SUE accepted a contract to perform salvage services for SKIPPIN SUE in the fixed amount of $115,000.00 USD.

41. A copy of the Salvage Contract between ACMG and Defendant Lansdowne is attached as Exhibit 2.

42. Noel Maycock signed the Salvage Contract as the owner/captain/owner's agent for SKIPPIN SUE and identified his address as 5700 Snake River Ranch Road, Wilson, Wyoming 83014.

43. ACMG issued an Invoice for Services on January 11, 2022 and is attached as Exhibit 3.

44. Defendant Lansdowne has failed to pay ACMG for the salvage services it successfully completed for OSV SKIPPIN SUE.

45. The Salvage Contract sets a contractual rate of interest of 1.5% per month or the maximum legal rate allowed for unpaid invoices.

46. The Salvage Contract provides for the recovery of attorney fees and costs incurred in collecting payments due.

47. Defendants have breached the Salvage Contract.

48. Defendants violated Article 21 of the International Convention on Salvage by leaving the first port of salvage without providing satisfactory security for ACMG's services. International Convention on Salvage art. 21, April 28, 1989, S. Treaty Doc No. 102-12 (1991).

49. The Salvage Contract and the salvage services provided by ACMG create a maritime lien on OSV SKIPPIN SUE, and ACMG brings this action to preserve and enforce the lien.

WHEREFORE, Plaintiff, ACMG, prays:

1. That this Verified Complaint is deemed good and sufficient;

2. That process in due form of law, according to the rules and practices of this Honorable Court, issue against the OSV SKIPPIN SUE, her engines, tackle, apparel, furniture, equipment, and all other necessaries, *in rem*, by way of arrest pursuant to Supplemental Admiralty Rule C, and that all persons claiming interest in said vessel be required to appear and to answer under oath, all and singular the matters aforesaid;

3. That process in due form of law, according to the rules and practices of this Honorable Court, issue against Lansdowne Ventures, LLC, requesting them to appear and answer all singular the matters aforesaid;

4. That because Lansdowne Ventures, LLC is a foreign corporation which cannot be found within this District, is not qualified to do business in the State of Virginia, and has no agent for the service of process, that all Lansdowne Venture, LLC's goods, chattels, funds, credits, money and other assets or property found within this District, including the OSV SKIPPIN SUE her engines, tackle, equipment, furniture, appurtenances, etc., be attached to satisfy the sum of ACMG's claims up to the amount of $115,00.00 USD plus contractual attorneys' fees, costs, expenses and interest, which continue to accrue during the pendency of this action and any appeal thereof, all pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, including the fees and costs of the United States Marshall;

5.   That this Court issue a Writ of Maritime Attachment and Garnishment of all property of Lansdowne Ventures, LLC in this District to the Registered Agent of Lansdowne Ventures, LLC located at JH Corporate Services, Inc, 60 E. Simpson Avenue, P.O. Box 2095, Jackson, WY 83001;

6.   That this Court retain the attached property and/or the proceeds of sale as security pending adjudication of ACMG's claims against Lansdowne Ventures, LLC;

7.   That any property attached in this proceeding be sold under the direction of this Court and the proceeds of the sale be deposited into the Registry of this Court;

8.   That this Court retain jurisdiction over Lansdowne Ventures, LLC to attach their property found within the District in order to enter a judgment in favor of ACMG and against Lansdowne Ventures, LLC, in personam, in the amount of ACMG's claim and any additional amounts owed, including, but not limited to, attorneys' fees, costs, expenses, and pre-judgment interest for ACMG's damages;

9.   That after due proceedings are held, there be judgment entered in favor of plaintiff, ACMG, and against defendant, the OSV SKIPPIN SUE, her engines, tackle, apparel, furniture, equipment, and all other necessaries, *in rem*, and against defendant Lansdowne Ventures, LLC, *in personam*, requiring defendants to pay damages to plaintiff in the amount of USD $115,00.00 for salvage services provided to the OSV SKIPPIN SUE and all other damages as may be proven at trial, with prejudgment interest, attorney's fees, and all costs of these proceedings; and

10.  That this Court grant ACMG such other and further relief as may be just and proper, including, but not limited to pre-judgment and post judgment interest.

Respectfully submitted:

**Thomas S. Berkley, Esq. (VSB No. 40124)**
**Jeffrey D. Wilson, Esq. (VSB No. 75734)**
PENDER & COWARD, P.C.
222 Central Park Ave., Suite 400
Virginia Beach, VA 23462
Telephone: (757) 502-7344
Facsimile:  (757) 622-4924
E-mail: tberkley@pendercoward.com
          jwilson@pendercoward.com
*Attorneys for Atlantic Coast Marine Group, Inc*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Thomas S. Berkley, verify under penalty of perjury that the following declarations are true and correct:

1.  I am an attorney at law admitted to practice in the Courts of the State of Virginia and the United States District Court for the Eastern District of Virginia.

2.  I am a shareholder in the Virginia Beach office of the firm of Pender & Coward, P.C.., attorneys for plaintiff, Atlantic Coast Marine Group, Inc. ("ACMG").

3.  I have read the foregoing Verified Complaint and know its contents, and the same are true to the best of my knowledge, information, and belief.

4.  The reason I am making this verification and not plaintiff, ACMG, is that plaintiff is a legal entity, no officers or directors of which are now within this district.

9

5. The source of my information and beliefs are statements, communications and other documents provided to me by Mr. John Fulweiler, Esq., counsel for ACGM, and Capt. Lee Sykes, agent and employee of plaintiff, ACMG.

Executed on this 28 day of February, 2022.

**Thomas S. Berkley, Esq. (VSB No. 40124)**
PENDER & COWARD, P.C.
222 Central Park Ave., Suite 400
Virginia Beach, VA 23462
Telephone: (757) 502-7344
Facsimile: (757) 622-4924
E-mail: tberkley@pendercoward.com

The foregoing instrument was acknowledged before me this 28TH day of February, 2022 by Mr. Thomas S. Berkley. He is personally known to me.

Notary Public

My commission expires: 8-31-22

Registration #: 7335023




| Month: __1__ | Vessel HIN # _DOC 576513_ Hailing Port _NOLA_ |
| --- | --- |
| Day: __5__ | Insurer/Policy # _____ |
| Year: __2022__ | |
| Time: __12:46__ | |

# SALVAGE CONTRACT
--- *READ CAREFULLY* ---

**EXHIBIT 2**

It is agreed this ___January 5th___, 202_2_ (*Insert Day/Month*) by and between **Atlantic Coast Marine Group, Inc.** ("Salvor") and the Owner/Captain/Authorized Agent of the vessel to be salvaged identified as ___Lee Syler___ on behalf of the vessel's owner identified as ___1976 Skipper Sue "Noel Maycock"___ ("Owner") together with the Vessel named ___Skippin Sue___ ("Vessel"), that the Salvor will render salvage services per these terms and conditions: ___104' LOA   USCG Doc 576513___
___6.8 Draft___

1. **What is Planned:** Salvor agrees to render assistance to and endeavor to save the Vessel and its contents and/or other property and deliver it to a location at or near _____ or, at Salvor's election, to the nearest safe port at which place and time Salvor's services will terminate unless otherwise mutually agreed.

2. **Control and Use of Vessel's equipment during salvage:** Salvor is entitled without expense to the reasonable use of the Vessel's equipment and to such possession and control of the Vessel as it deems necessary to perform the herein salvage services.

3. **Compensation:** No agreement on price or its reasonableness has been made at the scene unless agreed to in writing. Salvor performs on a **No Cure / No Pay** basis with its compensation to be calculated as specified below:

| | |
| --- | --- |
| **PURE SALVAGE:** (Compensation to be determined in accord with Articles 13 & (as applicable) 14 of SALCON 89): _____ | **FIXED FEE:** $ ___115,000.00___ |
| **TIME AND MATERIALS** (per rates set forth in Salvor's Basic Ordering Agreement ("BOA") approved and maintained by the U.S. Coast Guard, available upon request): _____ | **OTHER (Describe):** _____ |

4. **Pollution:** Notwithstanding the "No-Cure/No-Pay" basis, the Salvor is entitled to a reasonable allowance for actions it takes in preventing or minimizing environmental damage in accordance with Articles 13 and 14 of the 1989 International Convention on Salvage.

5. **What happens in the event of a dispute:** In the event of any dispute arising out of this Contract including any dispute regarding this salvage, the Salvor's services or concerning the reasonableness of any salvage award or other charges due hereunder, all parties to this Contract agree to arbitration in the United States under the then current Salvage Arbitration Rules of the Society of Maritime Arbitrators, Inc. Any award issued in the arbitration must include attorneys' fees and costs as well as arbitration administration expenses and the award shall be final and binding. Hearings required by the arbitrators, if any, shall be by remote video. For purposes of enforcement, the award may be entered for judgment in any court of competent jurisdiction. All parties consent to

the publication of the Award. *IMPORTANT, READ WITH CARE* – Where the salvage award demand is in excess of three hundred thousand dollars (exclusive of interest and collection costs), either party may opt out of arbitration and, instead, pursue resolution before the U.S. District Court for the Eastern District of North Carolina. All parties submit to the personal jurisdiction of the U.S. District Court for the Eastern District of North Carolina in connection with any litigation arising out of the herein services including an action to compel arbitration. Salvor shall recover its attorneys' fees and costs incurred in collecting payments due hereunder whether or not suit or arbitration is brought and for representation in arbitration and/or at trial as well as in any appellate proceeding.

6. <u>Jurisdiction / Lien / Security</u>: The Federal Maritime Law of the United States and the International Convention on Salvage (IMO 1989) shall govern this Contract and the Salvor's services. Services performed hereunder create a maritime lien against the Vessel and its generators, tenders, engines, sails, contents, electronics, cargo, fuel, fishing permits and other property including any posted security. Payment is due promptly upon presentation of Salvor's bill. Salvor's lien shall be preserved until payment. On Salvor's demand, Owner shall immediately post a Surety Bond in an amount equal to one and one-half times (1.5x) Salvor's presented billing. In lieu of a Surety Bond, Salvor will accept a Letter of Undertaking issued by Vessel's insurer in said amount provided the form and content is acceptable. A failure to demand security or any right hereunder does not waive Salvor's lien or any of its remedies. The Vessel shall not be removed from the port of delivery until security is posted. Salvor may satisfy collection of any judgment issued hereunder by recourse to any security posted.

7. <u>What if I sign this Contract after the salvage</u>: Where Salvor has already rendered salvage services to the Vessel prior to signing this Contract, the parties agree such services were necessary in order to secure the Vessel from further peril or risk of peril to Salvor's equipment, life and/or for the safety of the Vessel and/or its crew and all such services rendered in advance of this Contract are incorporated herein.

8. <u>Miscellaneous</u>: (a) Owner is responsible for any storage, towing, port or marina charges following delivery and for risk of loss thereafter, and Owner is responsible for all fines or penalties (civil or criminal) assessed in connection with any aspect of salvage. (b) Interest at the rate 1.5% per month (or maximum legal rate allowed) accrues on unpaid balances from 30 days after owner's or the vessel insurer's receipt of Salvor's invoice. (c) Any party to this Contract forced to seek judicial intervention to compel arbitration shall be awarded their reasonable attorneys' fees and costs incurred in having to take such action. (d) Owner/Captain/Agent instructs Vessel's insurer that any monies to be paid Salvor should be paid directly to Salvor. (e) Any calculation of the Vessel's salved value shall include, among other things, the value of all of its fishing permits, if any. (f) This Contract is the entire agreement between the parties. (g) This is a No-Cure/No-Pay Salvage Contract and Salvor may terminate this Contract if after reasonable investigation or effort it deems at its sole discretion, a successful salvage is not possible. (h) This Contract may be signed in counterparts, each of which, taken together shall constitute one and the same agreement.

By signing below, I acknowledge having read and understood this Contract, and
I fully agree to the Contract's terms and conditions.

**Salvor**
Signed: _____
Print Name: LEE Sykes

Atlantic Coast Marine Group, Inc.
P.O. Box 2298
Beaufort, NC 28516
Telephone: 252-728-5088

**Vessel Owner/Captain/Owner's Agent**
Signed: Noel J Maycock
Print Name & Title: Noel Maycock
Street: 5700 Snake River Ranch RD
City: Wilson   State: WY
Zip: 83014 / Tel: 305-308-0325

**ATLANTIC COAST MARINE GROUP, INC**
201 ARENDELL STREET
MOREHEAD CITY, NC  28557
252-728-5088
management@atlanticcoastmarinegroup.com
www.atlanticcoastmarinegroup.com



# INVOICE

INVOICE # 2022-A3
DATE 01/11/2022

**BILL TO**
Euroins Ins Co
Owner: Lansdowne Ventures, LLC
5700 Snake River Ranch Rd
Wilson, WY 83014

PLEASE DETACH TOP PORTION AND RETURN WITH YOUR PAYMENT.

| DATE | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 01/04/2022 | Vessel Grounded on Jetty price per contract signed | 1 | 115,000.00 | 115,000.00 |

THANK YOU!                                      BALANCE DUE     **$115,000.00**

A LATE FEE OF $100.00 WILL BE ADDED TO ALL INVOICES NOT PAID IN 30 DAYS. THIS WILL BE CHARGED MONTHLY ON ALL PAST DUE INVOICES

ALL ENVIRONMENTAL INVOICE PAYMENTS NOT RECEIVED WITHIN 30 DAYS WILL BE SUBMITTED TO THE OIL POLLUTION ACT OF 1990 UNDER SECTION 2713 (A)

MORE PORTS + MORE BOATS = FASTER RESPONSE TIME!
FED TAX ID # 27-2150068
REMIT PAYMENT TO: ACMG, INC, 201 ARENDELL STREET, MOREHEAD CITY, NC 28557



EXHIBIT 3